IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

LARRY TYRONE WILLIAMS,
    Petitioner,

v.                                           Civil No. 3:22cv172 (DJN)

HAROLD W. CLARKE,
    Respondent.

**MEMORANDUM OPINION**

Larry Tyrone Williams, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254, ("§ 2254 Petition," ECF No. 1),[1] challenging his convictions in the Circuit Court for Northumberland County, Virginia ("Circuit Court"). In his § 2254 Petition, Williams argues that the following grounds entitle him to relief:

    Claim One:     "Trial counsel rendered ineffective assistance by failing to investigate . . . whether the alleged victim . . . was persuaded by [Teresa] McDowell to falsely accuse" Williams of a crime. (*Id.* at 5.)

    Claim Two:     Trial "[c]ounsel rendered ineffective assistance by failing to interview or subpoena Laura Sosa as a witness for Petitioner." (*Id.* at 8.)

Respondent moves to dismiss, *inter alia*, on the grounds that Claim Two is defaulted and Claim One lacks merit. (ECF No. 20.)[2] Williams has responded. (ECF No. 22.) For the

---

[1]     The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the spacing, capitalization, punctuation, and spelling in the quotations from the parties' submissions.

[2]     By Memorandum Order entered on November 21, 2022, the Court denied Respondent's First Motion to Dismiss without prejudice and directed Respondent to file an amended response that comported with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. (ECF No. 17.) Respondent has complied with that directive and filed a Second Motion to Dismiss. (ECF No. 18.)

reasons that follow, the Second Motion to Dismiss, (ECF No. 17), will be GRANTED and the action will be DISMISSED.

## I. PROCEDURAL HISTORY

On August 17, 2017, a jury found Williams guilty of three counts of carnal knowledge of a child aged thirteen to fourteen years old, in violation of Va. Code Ann. § 18.2–63 (West 2023). (ECF No. 20-1, at 1–2.) On April 9, 2018, the Circuit Court entered an order sentencing Williams to five years of incarceration on each count, for a total sentence of fifteen years. (ECF No. 20-2, at 1, 4.) Williams appealed. On June 19, 2019, the Court of Appeals of Virginia denied the petition for appeal. (ECF No. 20-3, at 55–61.) The Court of Appeals of Virginia aptly summarized the evidence of Williams's guilt as follows:

> The victim testified that she engaged in a sexual relationship with appellant beginning when she was thirteen years old. Appellant was dating the victim's mother at that time. Appellant was a truck driver and the victim began accompanying appellant in his truck. The victim "looked at [appellant] like he was . . . [her] dad," she "felt extremely secure around him," and trusted him. The victim described her first sexual encounter with appellant. She recalled waking up in the truck to find appellant "giving [her] oral sex. The victim continued to travel with appellant and appellant repeatedly had oral sex with her. Later, appellant and the victim began having sexual intercourse on a regular basis. The victim recalled having frequent intercourse with appellant in his truck, in their house when no one else was home, and in other locations.
>
> After the family moved back to New Jersey, appellant became violent towards the victim and others in her family. During one incident, when the victim was seventeen, after the victim's mother called the police, appellant "yelled out, that's why I'm f'ing your daughter' real loud and so [everyone] heard it." The victim "was embarrassed," "didn't want anyone to know," and "denied it." After graduating from high school, the victim returned to Virginia and lived with her boyfriend. The victim's boyfriend became abusive and on October 19, 2012, the victim and her boyfriend were involved in an altercation that resulted in her boyfriend's death. The victim was indicted and was released on bond, but her bond was revoked in July 2013. While she was in jail, following her conviction for involuntary manslaughter, the victim responded to a letter she had received from her grandmother. In her response, the victim told her grandmother "everything," which was the first time that she had told anyone about her relationship with appellant.

2

> The victim's mother remembered hearing appellant's comment that he was "sleeping with" the victim. The victim's younger sister and brother also recalled the remark. The victim's grandmother confirmed that she received a letter from the victim while the victim was incarcerated. After reading the letter, the victim's grandmother contacted the Department of Child Protective Services. The victim's grandmother agreed that on prior occasions the victim had denied having had a sexual relationship with appellant.

(*Id.* at 58–59 (alterations and omissions in original).) In concluding that sufficient evidence existed to find Williams guilty, the Court of Appeals explained:

> Here, the victim gave a detailed and candid account of the extended sexual relationship that she had with appellant which began when she was thirteen years old. Her testimony was corroborated in part by the testimony of other family members who heard the remark appellant made. The jury believed the victim's testimony and rejected appellant's evidence. The credibility of witnesses is a matter for the fact finder to decide, weighing such factors as the witnesses' "opportunity for knowing the truth and observing the things about which they testify, their interest in the outcome of the case, their bias, and if any had been shown, their prior inconsistent statements and prior criminal convictions." *Taylor v. Commonwealth*, 61 Va, App. 13, 24 (2012) (quoting *Mullis v. Commonwealth*, 3 Va. App. 564, 571 (1987)). The record supports the jury's credibility determination. The victim's testimony established that appellant committed the offenses. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of three counts of carnal knowledge.

(*Id.* at 60.) On February 12, 2020, the Supreme Court of Virginia refused Williams's petition for appeal. (*Id.* at 66.)

On February 16, 2021, Williams filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. (ECF No. 20-6, at 2.) In his state habeas petition, Williams raised one "Ground" for relief that can be broken down into the following three claims:

Claim 1: Counsel rendered ineffective assistance by failing to "perform a reasonable investigation of the case;" (*id.* at 11)

Claim 2: Counsel rendered ineffective assistance by failing to "subpoena, prepare and/or present material witnesses for the defense;" (*id.*) and

Claim 3: Counsel rendered ineffective assistance when he failed to "inform Williams of his right to testify in his own behalf and the tactical implications of doing so or not," (*id.*).

3

On July 12, 2021, Williams filed a reply that raised new factual allegations. (ECF No. 20-9, at 6.) Specifically, for the first time, Williams added that he was denied the effective assistance of counsel when counsel failed to "discover and present" the "testimony of two (2) police officers to impeach the credibility of the alleged victims and other prosecutorial witnesses who testified falsely that they had heard [Williams] say, in the presence of these officers, 'that's why I sleeping with your daughter'" to the victim's mother. (ECF No. 20-8, at 4.) Williams also newly alleged that counsel failed to subpoena Ms. Sosa "regarding Ms. McDowell's [the victim's grandmother's alleged] plot to frame [Williams] by falsely accusing him of sexually [assaulting] the alleged victims herein and of raping Ms. Sosa." (*Id.*)[3] This second new claim is Claim Two of Williams's current § 2254 Petition.

On January 31, 2022, the Supreme Court of Virginia dismissed the petition, concluding that Claims 1 through 3 lacked merit and that the new claims raised in the reply, including Claim Two here, were not properly before the court. (ECF No. 20-9, at 1–7.) With respect to the latter claims, the Supreme Court of Virginia explained,

> The facts of these claims were known to petitioner at the time he filed his petition for writ of habeas corpus. *See* Code § 8.01–654(B)(2) (a petition for habeas corpus "shall contain all allegations the facts of which are known to petitioner at the time of filing"). In addition, petitioner did not request leave to amend his original petition, nor was he granted leave to do so. *See* Rule 5:7(e) (a petitioner may not raise new claims unless, prior to the expiration of the statute of limitations and the entry of a ruling on the petition, he obtains permission from the Court to do so).

(*Id.* at 7.)

Thereafter, in March of 2022, Williams filed his § 2254 Petition in this Court. The Court notes that Williams did not personally draft or sign his § 2254 Petition. Instead, this submission

---

[3] Williams was also charged with sexual crimes involving the victim's sister. Counsel moved to sever the trials, and the Court granted the motion. (*See* July 20, 2017 Tr. 6–10, 28.)

4

was "sign[ed], date[d], and mail[ed]" by Jonathan Lee X Smith, a former inmate and frequent litigant in this Court.[4] (*See* ECF No. 1, at 16–18.) Accordingly, Williams's § 2254 Petition lacks a verification under penalty of perjury from Williams that its contents are "true and correct." (*Id.* at 16.)

## II. REVIEW OF CLAIM TWO

### A. Exhaustion and Procedural Default

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). Absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501 U.S. at 750.

Respondent argues that Claim Two is barred from review here, because it was not properly raised in the state courts and the Supreme Court of Virginia found it barred by Va. Code Ann. § 8.01–654(B)(2) (West 2023). Va. Code Ann. § 8.01–654(B)(2) constitutes an adequate and independent state procedural rule. *See Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir.

---

[4] It appears from the handwriting that Lee X Smith also drafted Williams's state habeas petition. (*See* ECF No. 20-6.)

2000) (citing Va. Code Ann. § 8.01-654(B)(2) for the proposition that "claims not raised in an initial state habeas petition cannot generally be raised in subsequent state habeas petitions"). Claim Two is clearly defaulted.

Nevertheless, Respondent acknowledges that under *Martinez v. Ryan*, 566 U.S. 1 (2012), ineffective assistance of counsel "at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. Additionally, in his Reply, Williams vaguely suggests that "the failure of this Court to review [Claim] Two above on the merits would constitute a fundamental miscarriage of justice and would be fundamentally unfair[,] because he is actually innocent of the crimes for which he stands convicted, and Sosa's testimony would have established that fact." (ECF No. 22, at 4.) The Court finds that Claim Two is procedurally defaulted, and that Williams has shown neither cause and prejudice, nor that he is actually innocent. In the interest of judicial economy and because Claim Two clearly lacks merit, however, the Court instead turns to the merits of Claim Two.

B.  **Applicable Law for Claim Two**

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

6

undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### C. Claim Two Lacks Merit

In Claim Two, Williams contends that "counsel rendered ineffective assistance by failing to interview or subpoena Laura Sosa as a witness for Petitioner." (ECF No. 1, at 8.) Williams provides scant detail about this claim in his § 2254 Petition. However, in his Reply, Williams adds that he provided counsel with a DVD "on which Laura Sosa, a relative of McDowell's through marriage to a male member of her family, stated that McDowell tried to persuade her to falsely accuse [Williams] of raping her." (ECF No. 22, at 2.)[5] Williams contends that he "had informed counsel Jones of this frame and had explained that it was concocted and organized by McDowell," and that counsel could have used Sosa's testimony to impeach McDowell and her granddaughters. (*Id.*) Besides Williams's confusing statement, he fails to proffer exactly what Ms. Sosa would have testified to. Such failure is fatal to his claim. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir 2004) (observing that where a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have testified to in exculpation") *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir 1990) (petitioner's failure to allege "what an adequate investigation would have revealed or what . . . witnesses might have said, if they had been called to testify" was fatal to his ineffective assistance of counsel claim). Williams likewise fails to explain how Ms. Sosa's testimony would show that Williams is actually innocent of carnal knowledge or to offer sworn testimony from Ms. Sosa.

---

[5] It is unclear who Williams means by "her" in this statement. The Court assumes that Williams argues that Ms. McDowell tried to persuade Sosa to say that Williams raped Sosa.

7

Instead, Williams submits a DVD with what he claims is a recording of Ms. Sosa. Her statement was not provided under oath, lacks any indicia of reliability, appears to be comprised of both hearsay and exactly what Williams told her to say, lacks the ring of truth and does not constitute admissible evidence. Perhaps tellingly, in the state court, Williams noted that Ms. Sosa refused to provide a statement to the prosecutors in his case, but she agreed that Williams could record her statement. (ECF No. 20-8, at 9.)

Moreover, the Court finds that Ms. Sosa's statement, to the extent that it could even be considered here, has no bearing on whether Williams committed the crimes against the victim in this case. Williams contends that the recording shows that Ms. McDowell tried to get Ms. Sosa to say that Williams had raped Ms. Sosa. Presumably, Williams argues that Ms. Sosa's testimony would show that Ms. McDowell got the victim to make up the allegations against him. Instead, at most, the statement provides unverified hearsay from Ms. Sosa suggesting that Ms. McDowell wanted to see Williams convicted, which is understandable, as Williams had engaged in sexual relations with her underaged granddaughters for many years. Counsel cannot be faulted for failing to subpoena Ms. Sosa based on her recorded testimony.

Williams also fails to show any prejudice. The evidence of Williams's guilt was overwhelming. The jury heard the victim's testimony that she and Williams began a sexual relationship when she was thirteen, that they had sex frequently in many different places and that this this conduct continued for years. The victim recounted very detailed information about where and when it happened and how the relationship made her feel at different stages of her teen years. The victim explained that she was embarrassed about the relationship, did not want anyone to find out it and lied when asked about it, because she thought her mother, with whom she had a strained relationship, would choose Williams over her. (Aug. 16, 2017 Tr. 190–91, 263.) In the victim's later teen years, Williams became possessive and jealous and even

threatened to tell her mother about the sexual relationship. (Aug. 16, 2017 Tr. 196–97, 200, 203–04, 263.) At that point, the victim explained that she also did not want her boyfriend to find out that she had been having sex with her stepfather. (Aug. 16, 2017 Tr. 207–08.) Only when the victim learned that Williams had sexually abused her two younger sisters did she decide to tell her grandmother, Ms. McDowell, about her sexual relationship with Williams. (Aug. 16, 2017 Tr. 253–56, 258–59, 287.) The jury found the victim's testimony compelling and credible.

Moreover, the evidence demonstrated that Ms. McDowell could not have simply convinced the victim to make up these allegations to frame Williams, because additional evidence existed of his guilt. The evidence showed that Williams also had sexual relations with the victim's two sisters. Also, years before his conviction, in 2008, when the victim was seventeen, Williams essentially bragged in front of the whole family that he was having sex with the victim and four witnesses testified under oath that they heard Williams make this statement. (Aug. 16 2017 Tr. 207–08; 310–11, 323–24; Aug. 17, 2017 Tr. 12–13, 18–21, 36–37.) The victim's brother asked her if it was true, and the victim again denied it out of embarrassment. (Aug. 16, 2017 Tr. 248–49.) In sum, counsel cannot be faulted for failing to subpoena Ms. Sosa as a witness based on her unreliable, unsworn and unimpactful testimony, in light of the overwhelming evidence of Williams's guilt. Because Williams fails to show that counsel was deficient or that he was prejudiced, Claim Two lacks merit and will be DISMISSED

### III.   APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

####   A.   Law for Review of Claim One

To obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus.

Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

### B. Claim One

In Claim One, Williams argues that,

> Prior to the trial, [Williams] had informed counsel that the accusation against [Williams was] made-up by Teresa McDowell, the state's chief witness and the grandmother of the alleged victim. Nevertheless, counsel failed to investigate whether the alleged victim, a 13-15 year old female, was persuaded by McDowell to falsely accuse [Williams in order] to gain advantage in a New Jersey custody hearing. At the time this false accusation was made, [Williams] was seeking to regain custody of his two (2) sons from McDowell. He informed counsel of this court proceeding. Had he conducted a pretrial investigation, counsel would have discovered that the court advised McDowell it would grant [Williams] custody of his two (2) sons unless she provided, by the next court date, good cause as to why he should not gain custody of his boys. Counsel could have used [this] evidence at trial to establish a motive [for] McDowell to have persuaded her granddaughter to fabricate the allegations against Petitioner.

(ECF No. 1, at 5–6.) Williams raised this claim in his habeas petition before the Supreme Court of Virginia. In rejecting the claim, the Supreme Court of Virginia aptly explained:

10

> The Court holds that this portion of claim (1) satisfies neither the "performance" not the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Although petitioner provides affidavits suggesting he told counsel about the custody case and his theory that McDowell persuaded C.M. to lie, he has not identified what admissible evidence counsel should have discovered, through additional investigation, to prove the New Jersey court intended to grant custody to petitioner or otherwise support this theory. *See Muhammad v. Warden*, 274 Va. 3, 19 (2013) (rejecting claim that counsel was ineffective for failing to procure a witness where petitioner failed to identify the witness or proffer what information such witness would have provided). In addition, counsel reasonably could have concluded that raising custody issues could have opened the door to evidence demonstrating why petitioner no longer had custody of his children, and that such evidence would have done more harm than good. *See, e.g.*, *Morva v. Warden of the Sussex I State Prison*, 285 Va. 511, 520 (2013) ("Counsel is not ineffective for failing to present evidence that has the potential of being 'double-edged.'") Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(ECF No. 20-9, at 1.) Upon review of the Supreme Court of Virginia's decision and the record, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2).

Here, Williams faults counsel for failing to investigate his theory that the victim's grandmother, Ms. McDowell, persuaded the victim to make false allegations against Williams so that Williams would not get custody of his two sons in a New Jersey custody dispute. Beyond his blanket assertion, Williams offers no factual support for this theory. The record shows that the victim, while incarcerated, and after hearing that Williams had molested and raped her two young sisters, sent her grandmother a letter that admitted to the fact that she had engaged in a sexual relationship with Williams for many years while she was a teenager. Years prior, Williams had bragged that he was having a sexual relationship with the victim, which was confirmed by three additional witnesses who heard Williams's statement. At the time, the victim denied that it was true, because she was embarrassed and worried about her mother finding out. The jury heard the victim's and Ms. McDowell's testimony and found it both credible and

compelling. Williams fails to proffer any evidence, much less persuasive evidence, that would show that Ms. McDowell got the victim to lie about her sexual involvement with Williams, years after it happened, simply so that Williams would not get custody of his two children. The Court declines to fault Counsel for failing to pursue this meritless line of defense. Moreover, as the Supreme Court of Virginia aptly found, it was imminently reasonable for counsel to eschew this theory, because evidence that Williams did not have custody of his children, and why, may have done more harm than good in the eyes of the jury.

In sum, Petitioner demonstrates no deficiency of counsel or resulting prejudice. Accordingly, Claim One lacks merit and will be DISMISSED.

## V.   CONCLUSION

For the foregoing reasons, Respondent's Second Motion to Dismiss, (ECF No. 18), will be GRANTED. The § 2254 Petition, (ECF No. 1), will be DENIED and the action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Final Order shall issue.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Petitioner and counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: February 14, 2023